1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

PERRY ADRON MCCULLOUGH,

10                          Plaintiff,

11          v.

12   FEDERAL BUREAU OF PRISONS, et al.,

13                          Defendants.

14

15 _____/

CASE NO. 1:06-cv-00563-OWW-GBC PC

FINDINGS AND RECOMMENDATIONS
RECOMMENDING DISMISSING CERTAIN
DEFENDANTS

(Doc. 62)

OBJECTIONS DUE WITHIN THIRTY-DAYS

16   **I.    Procedural History**

17          Plaintiff Perry Adron McCullough ("Plaintiff") is a federal prisoner proceeding pro se and

18   in forma pauperis in this civil action pursuant to Bivens v. Six Unknown Named Agents of Federal

19   Bureau of Narcotics, 403 U.S. 388 (1971), which provides a remedy for violation of civil rights by

20   federal actors.  Plaintiff filed this action on February 24, 2005, in the United States District Court

21   for the District of Columbia.  (Doc. 1, attach. 1.)  The action was transferred to the Eastern District

22   on May 11, 2006.  (Doc. 1.)

23          Currently pending before the Court is Plaintiff's second amended complaint, filed March 30,

24   2009.  (Doc. 62.)  The second amended complaint names Defendants Federal Bureau of Prisons

25   ("FBOP"), Wackenhut Corrections Corporation ("WCC"), R. D. Andrews, John Pendleton, H. J.

26   Gardner, Terry Craig, Bob Stiefert, Matthew Holm, F. Dougherty, F. Bucholz, J. Toews, Barbara

27   Steward, G. Puentes, T. Bianco, and J. Cruz.  Plaintiff is seeking monetary damages.

28   ///

## II.    Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C  § 1915(e)(2)(B).

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)).

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S. Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 129 S. Ct. at 1949.  However, although the pleading standard is now higher, prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Hebbe v. Pliler, 611 F.3d 1202, 1204-05 (9th Cir. 2010) (citations omitted).

## III.    Complaint Allegations

Plaintiff is currently housed at the Federal Correctional Institution in Safford, Arizona.  The incidents that are the subject of this action occurred from early 2001 to mid 2002 while Plaintiff was housed at the Federal Correction Facility in Taft ("Taft"), California.  (Doc. 62, ¶ 22.)

After a racial incident that resulted in a lockdown at Taft, Defendant Andrews issued an order for each unit to select a Caucasian, Hispanic, and Black inmate representative to meet with

2

administration to discuss problems at the institution.  Plaintiff was selected as the Caucasian representative.  (Id., ¶ 24.)  Plaintiff attended a meeting on October 28, 2001, in which Defendant Andrews said that "he wanted and expected complete candor from the inmate representatives, and that there would be no retaliation for said candor."  (Id., ¶ 25.)

At a meeting on October 31, 2001, Plaintiff was instructed by Defendant Andrews "to prepare a [p]roposal for construction of a 'Par Course' on the [r]ecreation [y]ard.  A representative from each ethnic group, including Plaintiff, was to meet with Defendant Andrews when the proposal was completed.  (Id., ¶ 26.)  On November 21, 2001, the Hispanic representative, inmate Uribe, drafted a letter and requested Plaintiff sign it.  Plaintiff refused.  (Id., ¶ 27.)

On November 22, 2001, Defendants Andrews, Pendleton, Gardner, and Holmes allegedly caused Plaintiff to be confined to the Special Housing Unit ("SHU") without cause or written notice of the charges due to the letter incident.  (Id., ¶ 28, 35.)  On November 26, 2001, Defendant Holm allegedly authored a false incident report charging Plaintiff with "[e]ngaging in, or encouraging a group demonstration . . . and, [c]onduct which disrupts or interferes" with the running of the institution.  The incident, involving a food/work strike, occurred while Plaintiff was housed in the SHU.  (Id., ¶ 29.)  An officer attempted to serve Plaintiff with an Administration Detention Order ("ADO") on November 28, 2001, allegedly in violation of 28 C.F.R. § 541.22,[1] which Plaintiff refused to accept.  (Id., ¶ 30.)

From November 28, 2001 to May 15, 2002, Plaintiff attempted to remedy the "unlawful confinement" in the SHU due to the untimely notice of the ADO.  Plaintiff alleges he addressed the issue with Defendant's Dougherty, Bianco, and Craig.  (Id., ¶ 31.)  On April 11, 2002, Defendant Andrews responded to a congressional inquiring letter by falsely claiming that Plaintiff was placed in the SHU on November 23, 2001, an attempt was made to serve the ADO on Plaintiff that same day, and an additional attempt to deliver a copy of the ADO was made one week later.  (Id., ¶ 32.)

---

[1] The Warden shall prepare an administrative detention order detailing the reasons for placing an inmate in administrative detention, with a copy given to the inmate, provided institutional security is not compromised thereby. Staff shall deliver this order to the inmate within 24 hours of the inmate's placement in administrative detention, unless this delivery is precluded by exceptional circumstances. An order is not necessary for an inmate placed in administrative detention when this placement is a direct result of the inmate's holdover status.  28 C.F.R. § 541.22(b).

1    Plaintiff alleges that during the time he was attempting to get released from the SHU,

2  "Defendant Holm repeatedly entered [the] SHU for the sole purpose of trying to intimidate and chill

3  [Plaintiff]."  (Id., ¶ 33.)   Sometime in February 2002, Defendant Holm accused Plaintiff of

4  attempting to cause another disturbance by sending messages out of the SHU.  When Plaintiff denied

5  knowing about any messages, Defendant Holm wrote an incident report accusing Plaintiff of lying

6  to an officer.  The charges were upheld by "both the [Unit Discipline Committee ("UDC")] and the

7  DHO."  (Id.)

8    Plaintiff requested that the inmate representatives, Uribe and Benson, be allowed to testify

9  in his defense and that "Recreation and Education Supervisor Runyon" be allowed to act as his staff

10  representative.  Runyon met with Plaintiff around December 4, 2001, and expressed to Plaintiff that

11  he wanted to "beat them on this."  (Id., ¶ 34.)  The following day Runyon failed to come to the SHU

12  to meet with Plaintiff to prepare for the hearing.  Runyon sent a message that he would have to

13  decline to represent Plaintiff.  Several days later Plaintiff was told by Law Librarian Smith that

14  Runyon had been pressured to refuse to assist Plaintiff with his defense.  (Id.)

15    A DHO hearing was held on December 21, 2001, by Defendant Bianco.  Defendant Bianco

16  refused to allow Plaintiff to be present during the testimony of Uribe and Benson.  At the conclusion

17  of the hearing, Plaintiff was absolved of charges brought by Defendant Holm that Plaintiff lied to

18  an officer, but was found guilty of conduct interfering with the operation of the institution.  (Id., ¶

19  35.)  After the hearing, Uribe and Benson provided Plaintiff with sworn affidavits that he was not

20  involved in the letter incident that allegedly was the reason he was placed in the SHU.  (Id.)

21  Defendant was sentenced to loss of 27 days of good time credit, 30 days in disciplinary segregation

22  with 5 days credit, and a recommendation was made for a disciplinary transfer.  (Id., ¶ 36.)

23    Plaintiff appealed the DHO hearing on January 8, 2002.  (Id., ¶ 37.)  On February 8, 2002,

24  Regional Director Haro ("Haro"), issued findings and ordered Taft to "rewrite the incident report and

25  [for]the [UDC] and DHO to rehear [the] case."  (Id., ¶ 38.)   On February 12, 2002, Plaintiff was

26  served with an amended incident report.  (Id., ¶ 39.)  While the complaint is unclear, it appears that

27  the revised incident report stated that Defendant Holmes had five confidential informants claim that

28  Plaintiff approached them, after the date he was confined in the SHU, and attempted to incite an

inmate strike.  (Id., ¶ 40.)

Defendant Bianco conducted a second DHO hearing on February 21, 2002.  When Plaintiff claimed that it was physically impossible for him to have been involved because he was in the SHU on the date the confidential informants were approached, Defendant Bianco allegedly "hung her head and quietly said, '[T]his is bigger than me.'"  (Id.)  Defendant Bianco then found Plaintiff guilty of interfering with the running of the institution and imposed sanctions identical to those imposed on December 21, 2001.  (Id.)

Plaintiff appealed the second DHO hearing on April 27, 2002. (Id., ¶ 43.) On June 27, 2002, Haro remanded the case to Taft "directing the DHO to conduct a rehearing."  (Id., ¶ 44.)  On July 11, 2002, Plaintiff received Haro's order regarding the hearing.  (Id.)  Plaintiff alleges that during the time period between the order being issued and his receipt of the order, Defendants Puentes, Anderson, Toews, Cruz, Steward, Stiefert, Pendleton, Craig, Holm, Dougherty, Bucholz, Bianco, and Gardner "created an inaccurate record for the purpose of supporting decisions that would adversely affect [P]laintiff."  (Id., ¶ 46.)  On July 12, 2002, Plaintiff was transferred to the Federal Correction Institution in Tucson, Arizona ("Tucson").  A rehearing was conducted by Defendant Puentes on July 18, 2002.  (Id., ¶ 45.)

Plaintiff alleges that six inaccurate documents were created and approved by Defendants, charging him with "having a leading role in [an] effort to force changes 'acceptable to the population' upon [Taft] administration."  (Id., ¶ 47.)  When "the due process violations still failed to produce the desired effect, [Defendants] merely falsified the record, and imposed additional punishments . . . all simultaneous with the successful exercise of constitutionally protected [r]ights, constituting circumstantial evidence of retaliatory intent.  (Id., ¶ 50.)  Plaintiff alleges that Director Haro absolved him of the charges of having been involved in the offense.[2]  (Id., ¶ 47.)  Plaintiff also alleges that his transfer from Taft, a low security institution, to Tucson, a medium security institution, was in retaliation for his successful exercise of his First Amendment rights.  (Id., ¶ 49.)

_____

[2]It appears from the complaint that it is Plaintiff's belief that Haro absolved him of the charges by sending the case back for rehearing the second time.  Plaintiff alleges this was Haro's "way of telling the staff to grant the lawful relief required, i.e to quash the Incident Report(s), expunge the record, and release [Plaintiff] to the general population."  (Id., ¶ 44.)

5

1   Plaintiff intended to file a complaint "as soon as he conducted Freedom of Information Act

2   discovery to obtain the offending record, but he found he was not free of coercion and intimidation

3   designed to chill him from such action" at Tucson. (Id., ¶ 51.) He alleges he "was harassed with

4   repeated cell searches, confiscation and seizure of his private property, additional unsupported and

5   eventually expunged Incident Reports, and repeated harassment by guards." (Id., ¶ 51.) On March

6   4, 2004, Plaintiff received an affidavit from his cell mate stating that a guard told the cell mate to

7   "tell [Plaintiff] to watch his step, because they're after him." (Id.) Plaintiff alleges that he "was so

8   chilled by the actions of [Defendants] and their fellow prison staffers that he delayed filing of his

9   [c]omplaint until he was transferred to the low security [Federal Correctional Institution] at Terminal

10  Island, California in 2005. (Id., ¶ 52.)

11       **A.    First Cause of Action**

12  Plaintiff alleges that all Defendants, except FBOP and WCC, violated his Due Process rights

13  and double jeopardy "when they charged him, twice, with prohibited acts that were impossible for

14  him to have committed; when they failed to release him after it was established that [they had] failed

15  to timely provide him with an [ADO]; when they failed to timely notify him of the charges in

16  writing, twice; when they failed, twice, to support disciplinary findings with any evidence; and, when

17  they violated Plaintiff's rights in the absence of any legitimate penological interests being served."

18  (Id., ¶ 53.)

19       **B.    Second Cause of Action**

20  Plaintiff alleges his second cause of action against Defendants FBOP and WCC for violations

21  of The Privacy Act, 5 U.S.C. § 552a. He states that "Defendants Andrews, Pendleton, Gardner,

22  Craig, Stiefert, Holm, Dougherty, Bucholz, Toews, Steward, Puentes, Bianco, and Cruz willfully and

23  intentionally failed to maintain an accurate record of the proceedings, and falsified [P]laintiff's

24  [FBOP's] Central File." (Id., ¶ 54.) Defendants then used the falsified records to make decisions

25  adversely effecting Plaintiff. (Id.)

26  **IV.   Discussion**

27       **A.    Due Process**

28  The Due Process Clause protects against the deprivation of liberty without due process of

6

law. Wilkinson v. Austin, 545 U.S. 209 (2005).   In order to state a cause of action for a deprivation of due process, a plaintiff must first identify a liberty interest for which the protection is sought. The Due Process Clause does not confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence. Sandin v. Conner, 515 U.S. 472, 480 (1995).   However, a state may "create liberty interests which are protected by the Due Process Clause." Id. at 483-84.  A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996)(quoting Sandin, 515 U.S. at 484).

### 1.    False Reports

Plaintiff's allegations regarding the submission of false reports against him fails to state a cognizable claim for relief.  The Due Process Clause itself does not contain any language that grants a broad right to be free from false accusations, but guarantees certain procedural protections to defend against false accusations. Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986).  However, "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

### 2.    Administrative Segregation

The Due Process Clause does not "create a liberty interest in freedom from administrative segregation." Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Administrative segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration. Id. (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).  The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997).

### 3.    Reclassification/Transfer

A prisoner does not have a constitutional right to a particular classification while incarcerated. Hernandez v. Johnson, 833 F.2d 1316, 1318 (9th Cir. 1987). Nor is there a substantive liberty interest in being housed in a particular prison. Olim v. Wakinekona, 461 U.S. 238, 245

1   (1983); White v. Lambert, 370 F.3d 1002, 1013 (9th Cir. 2004), overruled on other grounds by

2   Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010).  Neither the initial decision assigning the inmate

3   to a particular prison nor a subsequent transfer to a different prison implicate the Due Process

4   Clause.  Olim, 461 U.S. 244-45; see Moody v. Daggett, 429 U.S. 78, 88 f.9 (1976); Montanye v.

5   Haymes, 427 U.S. 236, 242 (1976).  Since there is no constitutional right to a particular classification

6   while incarcerated, no liberty interests exists in Plaintiff's placement into a higher security

7   classification resulting in his transfer to a more restrictive institution.

8               **4.**     **Failure to Comply With 28 C.F.R. § 541.22(b)**

9        The Constitution only requires that prisoners be afforded those procedures mandated by

10   Wolff at a prison disciplinary hearing; it does not require that prison officials comply with their own

11   more generous procedures or time limitations.  See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th

12   Cir. 1994) abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995); Rogers v. Okin,

13   738 F.2d 1, 8 (1st Cir.1984).  The failure to deliver the order to Plaintiff within twenty four hours

14   of placing him in administrative segregation, which violates the Code of Federal Regulations, is not

15   a liberty interest for Due Process purposes.

16           **B.**    **Double Jeopardy**

17        The Double Jeopardy Clause precludes "a second prosecution for the same offense," and

18   prevents "the State from 'punishing twice, or attempting a second time to punish criminally, for the

19   same offense.'" Kansas v. Hendricks, 521 U.S. 346, 369 (1997) (quoting Witte v. United States, 515

20   U.S. 389, 396 (1995)).  These protections govern prosecutions and sentences carried out in state and

21   federal court based on criminal charges.  This Court is aware of no authority for the proposition that

22   the Double Jeopardy protections apply to administrative decisions by prison officials to segregate

23   their inmates, or indeed that these protections apply in any context other than state or federal court.

24           **C.**    **Privacy Act, 5 U.S.C. § 552a**

25        The purpose of the Privacy Act is "to protect the privacy of individuals identified in

26   information systems maintained by Federal agencies." Doe v. Chao, 540 U.S. 614, 618 (2004); see

27   Cooper v. F.A.A., 622 F.3d 1016, 1027 (9th Cir. 2010). The Act sets forth detailed instructions to

28   Federal agencies for managing records and provides relief to individuals who suffer harm by the

agency's failure to comply with the Act's requirements. <u>Cooper</u>, 622 F.3d at 1027. The Privacy Act provides that agencies that maintain records will "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5) (Westlaw December 17, 1999 to July 6, 2004). The United States has waived sovereign immunity under the Privacy Act and is liable for actual damages where there has been an intentional or willful violation of the Privacy Act. 5 U.S.C. § 552a(g)(4)(A) (Westlaw December 17, 1999 to July 6, 2004); <u>Cooper</u>, 622 F.3d at 1019. The cause of action is only against agencies of the United States, it does not apply to individuals. <u>Unt v. Aerospace Corp.</u>, 765 F.2d 1440, 1447 (9th Cir. 1985).

There are two types of Privacy Act claims: accuracy claims and access claims. <u>Rouse v. United States</u>, 567 F.3d 408, 413-14 (9th Cir. 2009). Accuracy claims arise in relation to maintaining accurate records and making reasonable efforts to ensure records are accurate prior to disseminating them.[3] <u>Id.</u> at 414. In order "to prevail on a claim under the Act, a plaintiff must prove that: (1) the government agency failed to uphold its record-keeping obligation; (2) the agency acted intentionally or willfully in failing to execute its responsibility; (3) the failure proximately caused an adverse effect on the plaintiff; and (4) the plaintiff sustained actual damages." <u>Cooper</u>, 622 F.3d at 1027; <u>Rose v. United States</u>, 905 F.2d 1257, 1259 (9th Cir. 1990); <u>see Rouse</u>, 567 F.3d at 417.

Since the Privacy Act only applies to federal agencies, no claim exists against Defendant WCC. In keeping with the prior order issued on October 17, 2008, the Plaintiff's allegation that FBOP employees falsified reports and his central file and used those records to convict him of a rule violation is sufficient to state a cognizable claim against FBOP.

**D.   <u>Retaliation</u>**

A plaintiff may state a claim for a violation of his First Amendment rights due to retaliation

---

[3]The Court notes that no case in the Ninth Circuit was found that addresses the issue of false reports being sufficient to violate the Privacy Act. However, other Circuits have found that "retaliatory fabrication of prison records would certainly meet [our] definition of a willful or intentional Privacy Act violation. . . ." <u>Downie v. City of Middleburg Heights</u>, 301 F.3d 688, 697 (6th Cir. 2002)(quoting <u>Toolasprashad v. Bureau of Prisons</u>, 286 F.3d 576, 586 (D.C. Cir. 2002).

under section 1983.  <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995).  A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonable advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir. 2005).  A plaintiff suing for retaliation under section 1983 must allege that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994).

Plaintiff's allegations that he was subject to retaliation due to his participation in the committee Defendants belief that he was involved in the letter incident is sufficient to state a cognizable claim against Defendants Andrews, Bianco, Bucholz, Craig, Cruz, Dougherty, Gardner, Holm, Pendleton, Puentes, Steward, Stiefert, and Toews,

**V.     Conclusion and Recommendation**

Plaintiff's complaint states a cognizable claim against Defendant FBOP for a violation of the Privacy Act, and against Defendants Andrews, Bianco, Bucholz, Craig, Cruz, Dougherty, Gardner, Holm, Pendleton, Puentes, Steward, Stiefert, and Toews for retaliation but does not state any other claims for relief under section 1983.  Because Plaintiff has previously been notified of the deficiencies and given leave to amend, the Court recommends that the non-cognizable claims be dismissed, with prejudice.  <u>Noll</u>, 809 F.2d at 1448-49.  Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     This action proceed on Plaintiff's second amended complaint, filed March 30, 2009, against Defendant FBOP for a violation of the Privacy Act, and against Defendants Andrews, Bianco, Bucholz, Craig, Cruz, Dougherty, Gardner, Holm, Pendleton, Puentes, Steward, Stiefert, and Toews for retaliation;

2.     Plaintiff's Privacy Act claim against Defendants Andrews, Bianco, Bucholz, Craig, Cruz, Dougherty, Gardner, Holm, Pendleton, Puentes, Steward, Stiefert, and Toews be dismissed, with prejudice, for failure to state a claim;

3.     Plaintiff's claim for retaliation against Defendant FBOP be dismissed, with prejudice, for failure to state a claim;

4.     Defendant Wackenhut Corrections Corporation be dismissed, with prejudice, based upon Plaintiff's failure to state a cognizable claim against them; and

5.     Any remaining claims and Defendants be dismissed for failure to state a claim..

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 IT IS SO ORDERED.

Dated:    December 6, 2010

UNITED STATES MAGISTRATE JUDGE

11